No. 98–2006.   CLOER ET AL. *v.* GYNECOLOGY CLINIC, INC., DBA PALMETTO STATE MEDICAL CENTER.   Sup. Ct. S. C.   Certiorari denied.

JUSTICE SCALIA, with whom JUSTICE THOMAS joins, dissenting.

Petitioner Michael Cloer is senior pastor of Siloam Baptist Church in Easley, South Carolina, and the founder and director of petitioner Pastors for Life, Inc., a group of pastors dedicated to protesting against, and offering alternatives to, abortion. Since 1989, Pastor Cloer and Pastors for Life have organized protests outside Palmetto State Medical Center, a facility in Greenville, South Carolina, operated by respondent Gynecology Clinic, Inc., that performs abortions.

In 1994, respondent filed suit against Cloer, Pastors for Life, and others, in South Carolina state court, alleging private nuisance, public nuisance, and civil conspiracy under state law. Respondent initially sought injunctive relief and damages, but subsequently waived its claim for damages. The trial court granted defendants' motion to dismiss the public-nuisance cause of action; after a bench trial, it rendered judgment for defendants on the private-nuisance claim, and for respondent on the civil-conspiracy claim. It entered an injunction barring the defendants from (1) trespassing on the private property of the clinic; (2) interfering with ingress to and egress from the clinic; (3) interfering with the free flow of traffic on the property of the clinic and adjoining public streets and sidewalks and approaching any physician employed by the clinic or any vehicle containing such a physician; (4) protesting within a 12-foot buffer zone along the public sidewalk on either side of the driveway of the clinic; (5) obstructing the view of street traffic by any vehicle that is attempting to exit the clinic; and (6) making any noise that would be heard inside the clinic.   App. to Pet. for Cert. 8a–9a.   The South Carolina Supreme Court affirmed the judgment in a summary opinion. 334 S. C. 555, 514 S. E. 2d 592 (1999).

Although in my judgment the scope of the injunction is unconstitutionally broad insofar as it prohibits approaching any physician or any vehicle containing a physician, and prohibits any noise that can be heard inside the clinic during any of its business hours, see *Madsen* v. *Women's Health Center, Inc.*, 512 U. S. 753, 812 (1994) (SCALIA, J., concurring in judgment in part and dissenting in part), there would be nothing about this case warranting

our attention if the judgment were based upon, and the scope of the injunction determined by, unlawful acts committed by petitioners. The First Amendment is not a license for lawlessness, and when abortion protesters engage in such acts as trespassing upon private property and deliberately obstructing access to clinics, they are accountable to the law. What makes the present case remarkable, however, and establishes it as a terrifying deterrent to legitimate, peaceful First Amendment activity throughout South Carolina, is the fact that the South Carolina Supreme Court's affirmance did not rest upon its determination that there was adequate evidence of unlawful activity. The analysis contained in its brief *per curiam* opinion begins as follows:

> "Appellants first assert that, because their actions are protected by the First Amendment, they cannot be the basis for a civil conspiracy. Under South Carolina law, lawful acts may become actionable as a civil conspiracy when the object is to ruin or damage the business of another. . . . The record is replete with evidence that appellants' goal is to discourage women from patronizing respondent's business with the goal of making abortion unavailable. Assuming appellants' acts were lawful, that fact does not prevent the finding of a civil conspiracy." 334 S. C., at 556, 514 S. E. 2d, at 592 (internal quotation marks and citations omitted).

This extraordinary application of state civil-conspiracy law to attempts to persuade persons not to patronize certain businesses would outlaw many activities long thought to be protected by the First Amendment—routine picketing by striking unions, for example, and the civil-rights boycotts directed against businesses with segregated lunch counters in the 1960's. It may well be that an attempt, by lawful persuasion, to harm someone's business out of sheer malice, or in order to capture his clientele, can be made illegal. But seeking to harm it (through persuasion) because of principled objection to the nature of the business—whether because of moral disapproval of abortion, or social disapproval of segregation, or economic disapproval of substandard wages—is an entirely different matter. If this sort of persuasive activity can be swept away under state civil-conspiracy laws, some of our most significant First Amendment jurisprudence becomes academic. Consider, for example, how the South Carolina Supreme Court's theory makes a nullity of our statement in a lead-

ing case involving the boycott of segregated businesses in Mississippi:

> "A massive and prolonged effort to change the social, political, and economic structure of a local environment cannot be characterized as a violent conspiracy simply by reference to the ephemeral consequences of relatively few violent acts. Such a characterization must be supported by findings that adequately disclose the evidentiary basis for concluding that specific parties agreed to use unlawful means, that carefully identify the impact of such unlawful conduct, and that recognize the importance of avoiding the imposition of punishment for constitutionally protected activity." *NAACP* v. *Claiborne Hardware Co.*, 458 U. S. 886, 933–934 (1982).

I would also note that even on its own terms the result produced by the South Carolina Supreme Court's opinion is irrational: If seeking to harm an abortion clinic's business through persuasion is indeed unlawful in South Carolina, why does the injunction permit such harm so long as it is inflicted at a distance of 12 feet from the driveway? The cryptic last paragraph of the South Carolina Supreme Court's opinion reads as follows: "Finally, appellants raise numerous evidentiary challenges to the findings of the trial judge which form the basis for the injunctive relief granted respondent. We find no evidentiary or constitutional error in the injunction issued here." 334 S. C., at 557, 514 S. E. 2d, at 593. Given what preceded (and avoiding the attribution of illogic to the South Carolina Supreme Court), this can mean nothing more than that the evidentiary findings supporting civil conspiracy, which would have justified a total ban of the antiabortion protests, adequately support the more limited ban. But even if it means that the trial court's findings of unlawful acts (such as trespass and obstruction of access) justified the terms of the injunction; and even if it means (quite illogically) that such unlawful acts will always be necessary to fix the scope of *injunctive* relief; the court's plain holding that "discourag[ing] women from patronizing [abortion clinics] with the goal of making abortion unavailable" *id.*, at 556, 514 S. E. 2d, at 592, *is an unlawful civil conspiracy* subjects all such activity—no matter how peaceful and law abiding—to civil damages.

I would grant certiorari in this case to consider the constitutionality of a novel civil-conspiracy doctrine that places routine,

lawful First Amendment activity under threat of financial liability, and probably under threat of injunction, throughout the State of South Carolina.